LOUISE HAMBURGER, Appellant, *v.* CORNELL UNIVERSITY, Respondent.

Third Department September 11, 1918.

Corporations — Cornell University not created for purpose of carrying out governmental functions — liability for negligence of servants and agents.

Cornell University, which was substantially endowed by its founder and also received an endowment from the United States government, was not created for the purpose of undertaking any governmental function

so as to absolve it from liability for the negligence of its servants and agents, and an order sustaining a demurrer interposed by it to a negligence action on such ground will be reversed.

KELLOGG, P. J., dissented.

APPEAL by the plaintiff, Louise Hamburger, from an order of the Supreme Court, made at the Saratoga Special Term and entered in the office of the clerk of the county of Saratoga on the 12th day of February, 1918, sustaining a demurrer to the second amended complaint and dismissing said complaint.

*Nash Rockwood* [*Charles A. Winter* and *H. P. Pendrick* of counsel], for the appellant.

*Mynderse Van Cleef* [*Oliver L. McCaskill* of counsel], for the respondent.

WOODWARD, J.:

The learned court at Special Term reaches the conclusion that our common-school system is a branch or department of government and those who administer it are administering a government activity or function, are the ministers or servants of the State in so doing, and would not be liable in negligence for misuser or nonuser, and then sets forth some of the statutory history of Cornell University, and reaches the conclusion that this corporation is, likewise, administering a government activity or function, and is, therefore, absolved from liability for the negligence of its servants and agents. But we are of the opinion that there is no such breadth to the rule invoked, which is concededly an exception to the general rule of liability on the part of corporate bodies. Railroad corporations, for instance, are created for the purpose of discharging a governmental activity (*Olcott v. Supervisors*, 16 Wall. 678; *New York & N. E. R. R. Co. v. Bristol*, 151 U. S. 556, 567; *Smyth v. Ames*, 169 id. 466, 544; *Louisville & Nashville Railroad v. Kentucky*, 161 id. 677, 696), but no court has ever yet suggested that these corporations were free from the liabilities which attach to private corporations, as to individuals, in the event of negligent conduct by which others are subjected to damages. An examination of the adjudicated cases will, we believe, disclose that there is no well-considered case which applies the rule of non-liability to any private or quasi-private cor-

poration, unless such corporation was engaged in a correctional or charitable work belonging to the State at large. Municipal corporations, in the conduct of their fire departments, police forces and hospitals, come within the rule invoked, and private corporations which are made use of by the State for the purpose of correctional punishments or detentions are brought within the exception to the general rule; but a university, devoted to the higher branches of learning, has never been considered as discharging such a duty to the public or the State as to give it immunity from the ordinary rules which govern other corporations. It is difficult to distinguish Cornell University from Dartmouth College under the law; they were both endowed, both incorporated. While Dartmouth College did not receive any part of its endowment from the United States government, this fact can hardly distinguish it, in character, from other universities based on private endowments, and it is well known that Cornell University was substantially endowed by Ezra Cornell, and that the incorporation was for the purpose of marshalling the assets and devoting them to the branches of education contemplated. The funds which came to Cornell University from the Land Grant Act* were, in so far as the State of New York is concerned, contributed by a party other than the State, and the character of the institution, as involving governmental functions of the State, is not different from that which would be involved if the donor had been a private person or a foreign government. It is, therefore, essentially what Dartmouth College was, an eleemosynary (1 Black. Com. 471), and, as far as respects its funds, a private corporation. (*Dartmouth College* v. *Woodward*, 4 Wheat. 518, 634.) Chief Justice MARSHALL, after arriving at the above conclusion, says: " Do its objects stamp on it a different character? Are the trustees and professors public officers, invested with any portion of political power, partaking in any degree in the administration of civil government, and performing duties which flow from the sovereign authority? That education is an object of national concern, and a proper subject of legislation, all admit. That there may be an institution,

---

* See 12 U. S. Stat. at Large, 503, chap. 130.— [REP.

founded by government, and placed entirely under its immediate control, the officers of which would be public officers, amenable exclusively to government, none will deny. But is Dartmouth College such an institution? Is education altogether in the hands of government? Does every teacher of youth become a public officer, and do donations for the purpose of education necessarily become public property, so far that the will of the Legislature, not the will of the donor, becomes the law of the donation? * * * Whence, then, can be derived the idea that Dartmouth College has become a public institution, and its trustees public officers, exercising powers conferred by the public for public objects? Not from the source whence its funds were drawn; for its foundation is purely private and eleemosynary — not from the application of those funds; for money may be given for education, and the persons receiving it do not, by being employed in the education of youth, become members of the civil government. Is it from the act of incorporation? Let this subject be considered. A corporation is an artificial being, invisible, intangible, and existing only in contemplation of law. Being the mere creature of law, it possesses only those properties which the charter of its creation confers upon it, either expressly, or as incidental to its very existence. These are such as are supposed best calculated to effect the object for which it was created. Among the most important are immortality, and, if the expression may be allowed, individuality; properties by which a perpetual succession of many persons are considered as the same, and may act as a single individual. They enable a corporation to manage its own affairs, and to hold property without the perplexing intricacies, the hazardous and endless necessity of perpetual conveyances for the purpose of transmitting it from hand to hand. It is chiefly for the purpose of clothing bodies of men, in succession, with these qualities and capacities, that corporations were invented, and are in use. By these means a perpetual succession of individuals are capable of acting for the promotion of the particular object, like one immortal being. *But this being does not share in the civil government of the country, unless that be the purpose for which it was created.* Its immortality no more confers on it political power, or a political character,

than immortality would confer such power or character on a natural person. It is no more a State instrument than a natural person exercising the same powers would be. If, then, a natural person, employed by individuals in the education of youth, or for the government of a seminary in which youth is educated, would not become a public officer, or be considered as a member of the civil government, how is it that this artificial being, created by law, for the purpose of being employed by the same individuals, for the same purposes, should become a part of the civil government of the country?   *   *   *   The objects for which a corporation is created are universally such as the government wishes to promote. They are deemed beneficial to the country; and this benefit constitutes the consideration, and in most cases, the sole consideration of the grant."

This, it seems to us, is a very complete answer to the theory on which this demurrer has been decided. Cornell University is not created for the purpose of undertaking any governmental function whatever. It is a mere creation of the Legislature for the purpose of carrying out the purposes of Ezra Cornell and the United States government, with others who might contribute, and is essentially just such an institution as Dartmouth College, in so far as any question here involved is concerned. It was not created for the purpose of carrying out any of the governmental functions of the State of New York, and it is not, therefore, freed from the obligations which attach to any other private corporation. It contracted with this plaintiff for the purpose of furnishing her an education in certain lines, and it owed her the duty of exercising reasonable care in the carrying out of that contract.

The order appealed from should be reversed, with costs, with permission to the defendant to plead over within twenty days, if so advised.

All concurred, except JOHN M. KELLOGG, P. J., dissenting on the opinion at Special Term.

Order reversed, with costs, with leave to the defendant to plead over within twenty days upon payment of costs, if so advised.