**Mary W. SANNER and Cecil B. Sanner**

v.

**The TRUSTEES OF the SHEPPARD AND ENOCH PRATT HOSPITAL.**

**Civ. A. No. 17989.**

United States District Court

D. Maryland.

Jan. 2, 1968.

Joseph I. Huesman, Baltimore, Md., and D. Robert Cervera, Washington, D. C., for plaintiffs.

Norman P. Ramsey, James D. Peacock, Cleaveland D. Miller, Semmes, Bowen & Semmes, Baltimore, Md., for defendant.

NORTHROP, District Judge.

Plaintiffs, Mary W. and Cecil B. Sanner, bring this suit against the defendant, the Trustees of the Sheppard and Enoch Pratt Hospital (hereinafter referred to as the Hospital), because of injuries suffered by Mary W. Sanner as a result of the alleged negligence of the Hospital's employees.

Plaintiffs allege that on or about December 9, 1963, they entered into an agreement with the Hospital for the commission of Mary Sanner to the Hospital for care and treatment, and that as a result of the negligent care of Mary Sanner, she fell from an unlocked or unbarred window or door and sustained serious and permanent injuries.

The defendant moves for summary judgment pursuant to Rule 56(b) and (c) of the Federal Rules of Civil Procedure, on the basis of charitable immunity.

Jurisdiction is based on diversity. Therefore, the court must follow the substantive law, both decisional and statutory, of the State of Maryland on the question of the applicability of the doctrine of charitable immunity. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

Since 1885, when the doctrine of charitable immunity was established in the case of Perry v. House of Refuge, 63 Md. 20 (1885), the Maryland courts have consistently held that an eleemosynary corporation is immune from tort liability. Loeffler v. Trustees of Sheppard and Enoch Pratt Hospital, 130 Md. 265, 100 A. 301, L.R.A. 1917, D., 967 (1917); Howard v. South Baltimore General Hospital, 191 Md. 617, 62 A.2d 574 (1948); Thomas v. Board of County Commissioners, 200 Md. 554, 92 A.2d 452 (1952); State for Use of Cavanaugh v. Arundel Park Corporation, 218 Md. 484, 147 A.2d 427 (1958); Cornelius v. Sinai Hospital, 219 Md. 116, 148 A.2d 567 (1958). To

fully effectuate this policy the immunity is complete, extending to all tortious activity. Howard v. South Baltimore General Hospital, supra. And it matters not that the plaintiff is a paying patient and not a beneficiary of the charity. In the *Howard* case, the court said:

"The appellant attempts to distinguish the Maryland cases cited on the grounds that plaintiff in the *House of Refuge* was an incorrigible boy, sent to the reformatory at public expense, and in the *Sheppard and Enoch Pratt* case, a city fireman injured on account of a known defect in the premises owned by the hospital. But we think the fact the plaintiff in the instant case was a 'pay patient', injured through negligence of a servant, is without significance. We think the cases cited are controlling."

The defendant points out that recently this court summarily dismissed several cases brought against the defendant. In Hannay v. The Trustees of the Sheppard and Enoch Pratt Hospital, Civil Action No. 14398, D.Md., March 4, 1964, summary judgment was granted in an oral opinion of the then District Judge Winter. In that case the court said:

"[T]his is a diversity case, and from the allegations, it is alleged that the tort occurred in Maryland. Certainly, Maryland law would apply and Maryland law in a case of this type, that is, tort liability on behalf of a hospital, is perfectly clear and that is that the hospital, being a charitable institution, is not amenable to suit for tort."

The holding of the court in Cooper v. The Trustees of the Sheppard and Enoch Pratt Hospital, Civil Action No. 17891, D.Md., March 10, 1967, oral opinion of the undersigned, was to the same effect. Behind this doctrine of immunity is that damages for tortious acts should be recoverable from the wrongdoer and not from the trust funds which are devoted to charitable purposes.

"In the final analysis it seems that the immunity of eleemosynary institutions to tort claims is grounded on an

assumed public policy against the enervation of public charities, established for the benefit of the whole community, by compensation of isolated individuals for injuries inflicted by the negligence of the charities and their agents." 5 Md.L.Rev. 336, 340 (1941).

This argument has lost its persuasiveness with courts in recent years in light of modern conditions, both in law and philanthropy. President and Directors of Georgetown College v. Hughes, 76 U.S.App.D.C. 123, 130 F.2d 810 (1942). In the *Georgetown* case the court observed:

"What is at stake, so far as the charity is concerned, is the cost of reasonable protection, the amount of the insurance premium as an added burden on its finances, not the awarding over in damages of its entire assets.

"Against this, we weigh the costs to the victim of bearing the full burden of his injury." at p. 824.

The prevalence of insurance and its low cost has had a profound influence on the law of tort immunity in general, both charitable and governmental immunity. Most recently the Indiana Appeals Court in Brinkman v. City of Indianapolis, 231 N.E.2d 169 (1967) in striking down the doctrine of governmental immunity, said:

"The inherent inequities found in the governmental-proprietary distinction and the availability of liability insurance as a substitute for and a supplement to governmental liability, have caused many states to abrogate the doctrine of municipal tort immunity. " * * * [T]he unfairness to the innocent victim of a principle of complete tort immunity and the social desirability of spreading the loss—a trend now evident in many fields— have been often advanced as arguments in favor of extending the scope of liability. * * * After careful consideration we are of the opinion that the doctrine of sovereign immunity has no proper place in the administration of a municipal corporation."

The vitality of the doctrine in Maryland, until the recent statutory change in 1966, even in the wake of widespread reevaluation of the doctrine and total abandonment by an increasing number of courts, can be attributed to several factors. First, the Maryland court prefers that long-established rules of law be changed by legislative action rather than by judicial fiat. Griffith v. Benzinger, 144 Md. 575, 125 A. 512 (1924); Townsend v. Bethlehem-Fairfield Shipyard, 186 Md. 406, 47 A.2d 365 (1946). Second, *stare decisis* with respect to this doctrine takes on added significance for the Maryland court has held that the legislative recognition of the judicial rule prevented the court from overruling its prior decisions. In Howard v. South Baltimore General Hospital the appellant contended, as the present plaintiffs argue, that the doctrine established in the *Perry* case and reaffirmed in *Loeffler* were wrongly decided and out of line with the modern trend. The court said:

"Whatever the merits of the argument as an original proposition, we are not warranted in overruling our prior decisions. There are special reasons why the doctrine of *stare decisis* should be adhered to in this case. To withdraw immunity from this type of corporation at this time would be an act of judicial legislation in the face of a contrary policy declared by the legislature itself.

"Not only has the legislature granted exemptions to charitable corporations from various forms of taxation, in order that their field of usefulness might be enlarged, but it has made direct appropriations to the same end. To establish a liability at this time would run counter to legislative policy and increase potential demands upon the State.

"In 1947, House Bill 99 proposed, in its original form, to estop any charitable corporation from pleading as a defense to tort claims the fact that it was such an institution, and further

provided that the liability should not exceed the amount of liability insurance carried. The bill failed of passage (Senate Journal p. 1462) S.B. 411, at the same session, was introduced as a substitute (Senate Journal 1408) and was adopted as § 68B of Article 48A, Acts 1947, ch. 900. This Section provides that 'each policy issued to cover the liability of any charitable institution for negligence or any other tort shall contain a provision to the effect that the insurer shall be estopped from asserting, as a defense to any claim covered by said policy, that such institution is immune from liability on the ground that it is a charitable institution.' It is clear that the legislature has accepted the doctrine announced by this court and dealt with the matter in its own fashion. The plaintiff here has not brought himself within the terms of the section quoted."

More recently, in 1966, the Maryland Legislature dealt with charitable immunity by enacting the following provision:

"Immunity from tort liability. No hospital or related institution as defined in this subtitle shall be immune from liability for negligence or any other tort on the grounds that it is a charitable institution; provided, however, that a hospital or related institution which is a charitable institution and which is insured against such liability in an amount not less than $100,000 shall not be liable for damages in excess of the limits of such insurance." Md.Code Ann.Art. 43 § 556A (Supp. 1966).

This latter provision is not relevant to the present case for Section 2, ch. 673, Acts 1966, provides that "nothing in this act shall apply to claims for acts of negligence or other torts occurring before June 1, 1966." The acts complained of by the plaintiffs occurred on or about December 8, 1963. It is cited here only to complete the historical development of charitable immunity in Maryland to the present time.

What distinguishes the present case from those cited above, and what has necessitated a review of the background of charitable immunity in Maryland, is that this appears to be the first constitutional challenge of the Maryland doctrine. Plaintiff contends that to grant summary judgment to the defendant because of its claimed immunity from suit would be in derogation of those rights guaranteed by Articles 19, 20, and 23 of the Maryland Declaration of Rights and by the Fourteenth Amendment to the United States Constitution.

The rights guaranteed by these Articles of the Declaration of Rights and the Fourteenth Amendment are the same. Specifically, Article 19 provides:

"Remedy for injury to person or property.

That · every man, for any injury done to him in his person or property, ought to have remedy by the course of Law of the land, and ought to have justice and right, freely without sale, fully without any denial, and speedily without delay, according to the Law of the land."

Article 20 provides:

"Trial of facts where they arise.

That the trial of facts, where they arise, is one of the greatest securities of the lives, liberties and estate of the People."

Article 23 provides:

"Due process.

That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or the Law of the land."

The words and content of these Articles are derived from the Magna Carta and are equivalent to "due process" as that term is used in the Fourteenth Amendment. 3 Willoughby, Constitution of the United States, § 1114 (2nd ed. 1929). The equivalency of the words and the meaning conveyed has been re-

iterated by the Maryland court time and again. Wright v. Wright's Lessee, 2 Md. 429 (1852); Matter of Easton, 214 Md. 176, 133 A.2d 441 (1956); County Commissioners of Anne Arundel County v. English, 182 Md. 514, 35 A.2d 135, 150 A.L.R. 842 (1943); Oursler v. Tawes, 178 Md. 471, 13 A.2d 763 (1940); Raymond v. State, 192 Md. 602, 65 A.2d 285 (1948). In construing these Articles the Maryland court has held that the decisions of the Supreme Court are practically direct authorities. Home Utilities Co., Inc. v. Revere Copper and Brass, Inc., 209 Md. 610, 122 A.2d 109 (1955); Goldsmith v. Mead Johnson & Co., 176 Md. 682, 7 A.2d 176, 125 A.L.R. 1339 (1939); City of Frostburg v. Jenkins, 215 Md. 9, 136 A.2d 852 (1957).

■ That due process requires more than just fairness of procedures in that it is also a substantive restraint on the content of laws cannot be questioned. Mr. Justice Brandeis in his concurring opinion in Whitney v. People of State of California, 274 U.S. 357, 47 S.Ct. 641, 71 L.Ed. 1095 (1927), said:

"Despite arguments to the contrary which had seemed to me persuasive, it is settled that the due process clause of the Fourteenth Amendment applies to matters of substantive law as well as to matters of procedure. Thus all fundamental rights comprised within the term liberty are protected by the federal Constitution from invasion by the states." 274 U.S. at p. 373, 47 S.Ct. at p. 647.

The right to recover damages against another who negligently inflicts injury has always been recognized as a property right. Martinez v. Fox Valley Bus Lines, 17 F.Supp. 576 (N.D.Ill.1936). This basic right to bring suit against one who wrongfully caused an injury remains unimpaired. The judicial policy of immunity, as recognized by the legislature, did indeed affect the remedy available in that one is not able to recover from the funds of the charity by imputation to the corporation. But it is not a fact, as plaintiffs contend, that the doctrine "summarily and arbitrarily wiped out the basic rights guaranteed by the Declaration of Rights" and the Fourteenth Amendment.

The original decision of the Maryland court was, as plaintiffs argue, a change in the common law of this state. The hallmark of the common-law system is that it is endowed with judicial inventiveness to meet new situations. The common law is not a solidified body of law. Rather, it is a "system" where sometimes evolutionary, sometimes revolutionary changes are made to meet changing conditions and circumstances.

■ The case of MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050 L.R.A. 1916F, 696 (1916) is an example where a new common law right was recognized in a purchaser against a manufacturer for injuries caused by latent defects in an article purchased at retail. And in United States v. Causby, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946) is an example of where the ancient common law rule that ownership of the land extends to the outermost limits of the universe was abandoned to meet the needs of the "air age." Substantive due process does not mean that there are vested rights in particular rules of common law. Truax v. Corrigan, 257 U.S. 312, 42 S.Ct. 124, 66 L. Ed. 254 (1921).

■ While there are no vested rights in common law rules, substantive lawmaking is constrained to the extent that it must not be arbitrary or irrational. In a long series of cases, beginning in the nineteen-thirties, the Supreme Court has refused to declare as violative of due process substantive laws so long as the court was able to find "reasonableness of means and ends." Lincoln Federal Labor Union, etc. v. Northwestern Iron & Metal Co., 335 U.S. 525, 69 S.Ct. 251, 93 L.Ed. 212 (1949); Day-Brite Lighting, Inc. v. State of Missouri, 342 U.S. 421, 72 S.Ct. 405, 96 L.Ed. 469 (1952); Williamson v. Lee Optical, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955).

One commentator has observed with regard to these cases that:

"Although there is no longer doubt as to how the Court will decide cases of this sort, it cannot be said that the Court has limited the due process clause to procedural matters and repudiated the concept of due process as a bar to sufficiently arbitrary or irrational substantive legislation—although Mr. Justice Black's opinion in the Lincoln Union case looks strongly in that direction." Stern, "The Problems of Yesteryear—Commerce and Due Process," in Essays in Constitutional Law 150 (1957).

The plaintiffs have the burden of demonstrating to this court the unreasonableness of the law contested.

"The standard of substantive due process is not 'conscience' or 'fairness' as in the procedural cases. Substantive due process, we know, has suggested to the modern court standards for permissible limitations on property different from those on liberty, and perhaps, too, different standards for limitations on different liberties. In regard to property, or even 'economic liberties', the standard has been reduced to 'reasonableness' of ends and means." 73 Yale L.J. 74 (1963).

A presumption of constitutionality is always raised when a law is attacked. This presumption of constitutionality is always stronger when, as here, the law contested has remained for such a long period of time a part of the decisional and statutory law of the state without ever being tested on constitutional grounds.

■■ Surely the ends sought to be accomplished by the doctrine, as enunciated by the court in Howard v. South Baltimore General Hospital, are reasonable, i. e. "in order that their field of usefulness might be enlarged" so as not to "increase potential demands upon the State." Charities labor in fields which ordinarily only the state would be concerned—areas of public welfare, health, and safety. The state, like the federal government, affirmatively encourages the operations of charitable institutions, for the larger the extent of their activity, the smaller is the burden of the state. The means used to effectuate this policy takes many forms, one being an immunity granted to the funds held in trust for charitable purposes. That a better scheme could be devised goes without saying. And one need only refer to the latest pronouncement of the Maryland Legislature to find one. But this court cannot substitute its judgment for the Maryland Legislature and say that because it had not passed a better or fairer law in 1948 that that statute recognizing charitable immunity from tort liability is unconstitutional or that the judicial policy behind it is, likewise, lacking in due process.

The few courts that have had the occasion to pass on the question raised here have all rejected the constitutional attacks on charitable immunity. The opinion of the court in Weeks v. Children's Hospital of Philadelphia, 200 F. Supp. 77 (E.D.Pa.1961) is particularly apt. In that case the Pennsylvania rule denying the application of the doctrine of *respondeat superior* to charitable institutions was attacked as unconstitutional under the due process clause. The court said:

"Plaintiff has not sustained her burden of proving that Pennsylvania has denied her due process of law and the equal protection of its laws because its courts exempt charitable institutions from the doctrine of respondeat superior in tort cases such as the instant one.

"Even if a state law discriminates in favor of a certain class, the law is not arbitrary and violative of the equal protection clause if the discrimination is founded on a reasonable distinction. State Board of Tax Commissioners of Indiana v. Jackson, 283 U.S. 527, 51 S.Ct. 540, 75 L.Ed. 1248 (1931). The Supreme Court has found laws based on various distinctions constitutional. Cf. Helver-

ing v. Bliss, 293 U.S. 144, 149–151, 55 S.Ct. 17, 79 L.Ed. 246 (1934). * *

"The state has the power to provide for the health of its citizens. Nonprofit hospitals which are supported in large measure by state funds bear a close relationship with this power. The health of the state's citizens might properly be considered in jeopardy if these charitable hospitals were made liable under the doctrine of respondeat superior for tort injuries caused by their servants.

"Plaintiff has not shown that this Pennsylvania rule is arbitrary and an unreasonable classification. This court may not, therefore, declare it to be violative of the Fourteenth Amendment to the United States Constitution."

Besides this constitutional argument plaintiffs also allege that the defendant is an ordinary business corporation and by its charter had the power "(t)o sue and be sued, plead and be impleaded, answer and be answered, defend and be defended, in any court of Law or Equity, or other place whatsoever" and, consequently, should not be immune from suit.

This contention is wholly without substance. As pointed out earlier, the present defendant has been held to be a charitable institution on several occasions. None of the allegations contained in the plaintiffs' papers, namely that many patients of defendant pay their own expenses or that the defendant pays salaries and owns and profits from properties held, affect its status as a charitable institution. Glass v. Doctors Hospital, Inc., 213 Md. 44, 131 A.2d 254 (1957). The phrase "to sue and be sued" is not a talisman which magically subjects to suit a charitable institution. And most courts that have been presented with the question have held that the words do not have that effect. Hamburger v. Cornell University, 204 App. Div. 664, 199 N.Y.S. 369 (1923); Abston v. Waldon Academy, 118 Tenn. 24, 102 S.W. 351, 11 L.R.A.,N.S., 1179 (1907); Fordyce v. Woman's Christian Nat. Library Ass'n, 79 Ark. 550, 96 S.W. 155 7 L.R.A.,N.S., 485 (1906); Hooten v. Civil Air Patrol, 161 F.Supp. 478 (E.D.Wis.1958).

For the above reasons, the Hospital's motion for summary judgment must be granted.

Defendant's counsel will submit an appropriate order.