HON. EWALD B. NYQUIST Commissioner of Education
This is in response to your recent letter in which you ask my opinion concerning whether certain employees of the Board of Regents of the University of the State of New York are employees of the State or of a political subdivision thereof for the purposes of Social Security Coverage.
The general issue to be determined is whether or not the employees involved are employees of the State of New York or a "political subdivision" as defined in 42 U.S.C.A. § 418 (b) (2):
 (2) The term "political subdivision" includes an instrumentality of (A) a State, (B) one or more political subdivisions of a State, or (C) a State and one or more of its political subdivisions.
The agreement which the State of New York entered into with the Secretary of Health Education and Welfare, pursuant to the provisions of 42 U.S.C.A. § 418 (Section 218 of the Social Security Act), contains such provisions, not inconsistent with the section, as the State requested. Neither the original agreement nor its subsequent modifications covered the employees of the University of the State of New York at issue here. The employees have in no way been treated as state employees by the State and the State has the responsibility for deciding which groups of employees are to be covered under its agreement.
To determine the nature of the status of the employees at issue herein it is necessary to examine the legal history of the University of the State of New York. The corporation known as the Regents of the University of the State of New York was established by chapter 51 of the Laws of 1784 and amended by chapter 82 of the Laws of 1787. The legal status of the organization was that of a private corporation (Lincoln,Constitutional History of New York, Vol. III at p. 535). The Regents themselves were required to perform some of what are now public functions but they then acted solely in the form of a private corporation not as public officers (Lincoln, id.).
Thus, the status of the Regents of the University of the State of New York was much the same as that of Dartmouth College inDartmouth College v. Woodward, 4 Wheat 518, 634, 4 L. Ed. 629
and of Cornell in Hamburger v. Cornell University, 184 App. Div. 403
(1918), mo. for lv. to appeal granted 186 App. Div. 929
(1918), judgment affd. 226 N.Y. 625 (1919); the status being of a private corporation funded by private funds whose purposes had a public benefit. Chief Justice Marshall in the Dartmouth case at pages 634 and 635 quoted at length in the Hamburger case at pages 406 and 407 gave a classic definition of a corporation.
 "A corporation is an artificial being, invisible, intangible, and existing only in contemplation of law. Being the mere creature of law, it possesses only those properties which the charter of its creation confers upon it, either expressly, or as incidental to its very existence. These are such as are supposed best calculated to effect the object for which it was created. Among the most important are immortality, and, if the expression may be allowed, individuality; properties by which a perpetual succession of many persons are considered as the same, and may act as a single individual. They enable a corporation to manage its own affairs, and to hold property without the perplexing intricacies, the hazardous and endless necessity, of perpetual conveyances, for the purpose of transmitting it from hand to hand. It is chiefly for the purpose of clothing bodies of men, in succession, with these qualities and capacities, that corporations were invented and are in use. By these means a perpetual succession of individuals are capable of acting for the promotion of the particular object, like one immortal being. But this being does not share in the civil government of the country, unless that be the purpose for which it was created. Its immortality no more confers on it political power, or a political character, than immortality would confer such power or character on a natural person. It is no more a state instrument than a natural person exercising the same powers would be. If, then, a natural person, employed by individuals in the education of youth, or for the government of a seminary in which youth is educated, would not become a public officer, or be considered as a member of the civil government, how is it that this artificial being, created by law, for the purpose of being employed by the same individuals for the same purposes, should become a part of the civil government of the country? * * * The objects for which a corporation is created are universally such as the government wishes to promote. They are deemed beneficial to the country; and this benefit constitutes the consideration, and, in most cases, the sole consideration, of the grant." (Emphasis added.)
The Regents of the University of the State of New York, as a private corporation, has had a continuous existence with regard to its function as a trustee of funds from private sources dedicated to educational or scientific purposes. This continuity existed despite the fact that, with relation to the many additional duties conferred upon it over the years, it has become a part of the civil government of the State with respect to these additional duties. The continuity of the private corporation can be readily demonstrated through an examination of the development of the University of the State of New York as it exists today.
Chapter 51 of the Laws of 1784 established the Board as a corporation and authorized the Board to "hold, and possess estates real and personal to the annual amount of forty thousand bushels of wheat, over and above all profits arising from room rent or tuition money" and provides that "whenever any lands, tenements or hereditaments, or other estate real or personal, shall be given, granted or conveyed to the regents of the university of the State without expressing any designation thereof, such estate shall be applied in such manner as to the said regents shall seem most advantageous to the said university — provided always, that whenever any gift, grant, bequest, devices or conveyance shall express the particular use to which the same is to be applied, if adequate thereto, it shall be so applied and no otherwise."
Thus the Regents were officers of a private corporation in which capacity they had the right to receive, to hold title to, and to administer grants from private sources. The use to which such funds or grants or property could be put to was only restricted by the intent of the donor, if no such intent was expressed then the funds were to be applied as the regents saw fit within the bounds as established by chapter 82 of the Laws of 1787.
The restrictions contained in chapter 82 of the Laws of 1787 are as follows:
 ". . . and be it further enacted by the authority aforesaid, that it shall and may be lawful, to and for the said regents, from time to time to apply such part of their estate and funds in such manner as they may think most conducive to the promotion of literature in the advancement of useful knowledge within this State. Provided always that where grants shall be made to them, for certain uses and purposes therein expressed and declared, the same shall not be applied, either in the whole or in part, to any other uses."
The regents in addition to their other roles were thereby established as trustees of various trust grants.
Thus the University of the State of New York was, at its inception, a private corporation funded through money from private sources. A government may charter a private corporation for a quasi-public or even a public function, Dartmouth College
v. Woodward, supra.
The corporation created by the Act of 1784 has had a continuous existence although its legal status has been substantially altered. Article IX, § 2) continued the corporation under a new name without altering its powers and provided:
 "The corporation created in the year one thousand seven hundred eighty-four, under the name of the Regents of the University of the State of New York, is hereby continued under the name of the University of the State of New York. It shall be governed and its corporate powers, which may be increased, modified or diminished by the legislature, shall be exercised by not less than nine regents."
The corporation, having gained Constitutional recognition was continued and its public responsibilities expanded, however, its private nature was never abrogated. The corporation's power to hold and administer property from private sources has been continued with the enactment of Education Law, § 201:
"§ 201. Corporate name and objects
 "The corporation created in the year seventeen hundred eighty-four under the name of The Regents of the University of the State of New York, is hereby continued under the name of The University of the State of New York. Its objects shall be to encourage and promote education, to visit and inspect its several institutions and departments, to distribute to or expand or administer for them such property and funds as the state may appropriate therefor or as the university may own or hold in trust or otherwise, and to perform such other duties as may be intrusted to it. The said corporation shall have power to take, hold and administer real and personal property and the income thereof in trust for any educational, scientific, historical or other purpose within the jurisdiction of the regents of The University of the State of New York." (Emphasis added.)
The corporation originally known as the Regents of the State of New York has had a continuous corporate existence with the basic private nature of its original function and purpose remaining unaltered. The original private power we are dealing with is the power to hold and administer funds from private sources for educational purposes. As a corporation, a basic element of its legal character is this continuity or "immortality". DartmouthCollege v. Woodward supra; Hamburger v. Cornell University,supra.
The certain employees in question are those employed by the Regents in its continued capacity as a private corporation. I have been advised by your staff that these employees are hired to administer private grants in a trust capacity. Their salaries are paid out of these private funds not through the State Treasury. Furthermore, these employees have been considered to be private employees and, therefore, not covered for purposes of the New York State Retirement System and State Unemployment Insurance Fund.
Therefore, I conclude that despite the public roles and functions placed upon the University of the State of New York by Article XI, § 2 of New York State Constitution and the various sections of the Education Law, the University of the State of New York has had a continuous existence as a private corporation with respect to its role as trustee of grants made from private sources for educational purposes. I further conclude that employees of the University of the State of New York hired by the Board of Regents for the specific purpose of administering these private funds are not State employees and therefore are not covered under the provisions of the Federal-State Agreement made pursuant to42 U.S.C.A. § 418, and the regulations promulgated thereunder and the applicable sections of the Retirement and Social Security Law. These particular employees are not employees of a "political subdivision" of the State of New York as defined in section131 of the Retirement and Social Security Law or 42 U.S.C.A. § 418 (b) (2) so as to be covered by the Federal-State Agreement.