# LEON GOLDSMITH v. MEAD JOHNSON & COMPANY.

[No. 27, April Term, 1939.]

*Decided June 28th, 1939.*

The cause was argued before OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, JOHNSON, and DELAPLAINE, JJ.

*Morton M. Robinson,* with whom were *Herman Samuelson* and *Jerome Robinson* on the brief, for the appellant.

*Herbert Levy,* for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

This appeal questions the constitutional validity of the Fair Trade Act of Maryland (Acts of 1937, ch. 239).

The act sanctions contracts establishing minimum retail prices on commodities, which bear trade-marks, brands, or names of the producers or distributors, and which are in free and open competition with commodities of the same general class produced or distributed by others. "Wilfully and knowingly advertising, offering for sale or selling any commodity" below the price stipulated in such a contract "is unfair competition and is actionable at the suit of any person damaged thereby," whether or not the person so advertising, offering for sale, or selling, is a party to the contract.

A bill of complaint was filed in the Circuit Court of Baltimore City by Mead Johnson & Company, an Indiana corporation, praying for an injunction against alleged unfair competition of Leon Goldsmith, a retailer. The bill alleges that the complainant manufactures articles of infant nutritional diet under its name, trade-marks, brands, and labels; that it sells the products to wholesalers, who sell them to retail dealers; that the defendant is one of said dealers; that the complainant entered into a contract with approximately 179 dealers in Maryland to prevent "the injurious and uneconomic practice of price-cutting"; but that the defendant failed to execute the contract. The bill further alleges that in June, 1938, the defendant was selling the products below the established prices; and that, although a warning was thereupon sent to him, he was continuing to sell wilfully and knowingly in violation of the statute.

After a temporary injunction was granted, the defendant demurred to the bill. The court passed an order overruling the demurrer, and from that order an appeal was taken.

The Fair Trade Act has been enacted in forty-four States, including Maryland. In all the states in which its constitutionality has been tested, it has been held

valid. *Max Factor & Co. v. Kunsman,* 5 Cal. 2nd 446, 55 P. 2nd 177; *Pyroil Sales Co. v. Pep Boys,* etc., 5 Cal. 2nd 784, 55 P. 2nd 194, 1186; *Seagram-Distillers Corp. v. Old Dearborn Distributing Co.,* 363 Ill. 610, 2 N. E. 2nd 940; *Joseph Triner Corp. v. McNeil,* 363 Ill. 559, 2 N. E. 2nd 929; *Bourjois Sales Corp. v. Dorfman,* 273 N. Y. 167, 7 N. E. 2nd 30·; *Johnson & Johnson v. Weissbard,* 121 N. J. Eq. 585, 191 A. 873; *Weco Products Co. v. Reed Drug Co.,* 225 Wis. 474, 274 N. W. 426.

The validity of this legislation has also been sustained without dissent by the United States Supreme Court. The Illinois act, Smith-Hurd Stats. ch. 121½, sec. 188 et seq., was upheld in the cases of *Old Dearborn Distributing Co. v. Seagram-Distillers Corp.* and *McNeil v. Joseph Triner Corp.,* 299 U. S. 183, 57 S. Ct. 139, 81 L. Ed. 109; the California act (Gen. Laws 1931, and Supp. 1933, Act 8782) in *Pep Boys, Manny, Moe & Jack v. Pyroil Sales Co.* and *Kunsman v. Max Factor & Co.,* 299 U. S. 198, 57 S. Ct. 147, 81 L. Ed. 122.

Accordingly, in Pennsylvania the constitutionality of the Fair Trade Act, 73 P. S. sec. 7 et seq., is now accepted without question. *Shryock v. Association of United Fraternal Buyers,* Pa. Super., 5 A. 2nd 581.

Nevertheless, the appellant contends that the act is invalid on the ground that it violates the Declaration of Rights and Constitution of Maryland.

The appellant contends that the act conflicts with article 23 of the Declaration of Rights, which provides that no man ought to be "deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the Land." But "the Law of the Land," as used in our Declaration of Rights, has the same significance as "due process of law," as used in the Fourteenth Amendment to the Constitution of the United States. *Public Service Commission v. Northern Central R. Co.,* 122 Md. 355, 90 A. 105. In construing this article of the Declaration of Rights, the decisions of the Supreme Court on the Fourteenth Amendment are "practically direct au-

thorities." *Niles, Md. Constitutional Law*, 48. And in the *Old Dearborn* case (299 U. S. 183, 57 S. Ct. 143), Justice Sutherland said: "In respect of the due process of law clause, it is contended that the statute is a price-fixing law, which has the effect of denying to the owner of property the right to determine for himself the price at which he will sell. * * * But the decisions referred to deal only with legislative price fixing. They constitute no authority for holding that prices in respect of 'identified' goods may not be fixed under legislative leave by contract between the parties. * * * We are here dealing not with a commodity alone, but with a commodity plus the brand or trade-mark which it bears as evidence of its origin and of the quality of the commodity for which the brand or trade-mark stands. * * * The ownership of the good will, we repeat, remains unchanged, notwithstanding the commodity has been parted with."

The appellant also contends that the act is repugnant to article 41 of the Declaration of Rights, which says: "That monopolies are odious, contrary to the spirit of a free government and the principles of commerce, and ought not to be suffered." In an opinion of the Supreme Court, Chief Justice Fuller cited Lord Coke's definition: "A monopoly is an institution, or allowance by the King by his grant, commission, or otherwise to any person or persons, bodies politique, or corporate, of or for the sole buying, selling, making, working, or using of anything whereby any person or persons, bodies politique, or corporate, are sought to be restrained of any freedome or liberty that they had before, or hindred in their lawfull trade." *United States v. E. C. Knight Co.*, 156 U. S. 1, 15 S. Ct. 249, 252, 39 L. Ed. 325. In recognizing this definition, our court has said: "To constitute a monopoly within the meaning of this definition, there must be an allowance or grant by the state to one or several of a sole right; that is, a right to the exclusion of all others than the grantee or grantees." *Wright v. State*, 88 Md.

436, 41 A. 795, 798. So, it has been held that exclusive control constitutes monopoly in the economic sense. *Raney v. Montgomery County*, 170 Md. 183, 183 A. 548. The Fair Trade Act does not abolish competition. This is made plain by Justice Sutherland: "Where a manufacturer puts out an article of general production identified by a special trade-mark or brand, the result of an agreement fixing the subsequent sales price affects competition between the identified articles alone, leaving competition between articles so identified by a given manufacturer and all other articles of like kind to have full play. In other words, such restraint upon competition as there may be is strictly limited to that portion of the entire product put out and plainly identified by a particular manufacturer or producer."

The appellant further contends that the act delegates legislative power in derogation of article 3 of the Constitution, which vests this power in the General Assembly. This argument likewise has been answered by the Supreme Court: "It is clear that this section does not attempt to fix prices, nor does it delegate such power to private persons. It *permits* the designated private persons to contract with respect thereto. It contains no element of compulsion, but simply legalizes their acts, leaving them free to enter into the authorized contract or not as they may see fit. * * * We find nothing in this situation to justify the contention that there is an unlawful delegation of power to private persons to control the disposition of the property of others * * *."

The appellant finally contends that the act fails to comply with article 3, section 29, of the Constitution, which requires that "every law enacted by the General Assembly shall embrace but one subject, and that shall be described in its title." However, the title of the act designates the proper location of the statute in the Code (art. 83, title "Sales and Notices"), as did the title for the previous act (Acts of 1935, ch. 212), which has been repealed. It also discloses its purpose, namely the "cor-

recting, clarifying and amplifying" of the Act of 1935; so that the constitutional requirement is more amply gratified. *Fowler v. Harris,* 174 Md. 398, 200 A. 825. Moreover, it explains that its object is "to protect trademark owners, producers, distributors and the general public against injurious and uneconomic practices in the distribution of competitive commodities bearing a distinguishing trade-mark, brand or name, through the use of voluntary contracts establishing minimum resale prices." But the appellant complains that the words "through the use of voluntary contracts" are deceptive and misleading, because there is a possibility that some dealers may not enter such contracts. That objection is answered by the explanation that these words merely describe the method by which the desired protection against price-cutting is to be obtained, for without the voluntary contracts no price restriction is binding upon any one. The provisions of the act are sufficiently described in the title. *Worcester County v. Board of School Commissioners,* 113 Md. 305, 77 A. 605.

The appellant further says that even though the act be valid, the bill of complaint is insufficient. He says the bill does not allege that he acquired the goods after he received knowledge of the price restriction. He says the United States Supreme Court did not decide whether a retailer is bound when he had no knowledge of price restriction at the time he acquired the goods. Whatever may be the ruling under such circumstances, the burden of proving lack of knowledge should be placed upon the retailer "as a matter of convenience in facilitating enforcement." 52 Harvard Law Review, 293. Even where exceptions are expressly made in the provisions of a statute, it is held in Maryland that it is not necessary for a pleader either at law or in equity to negative the exceptions in advance, but it is for the opposite party to show them. *Carroll v. Waring,* 3 G. & J. 491. A demurrer is founded upon some point of law which goes to the absolute denial of the relief sought, and asks the

court to determine whether the defendant should be compelled to answer the complainant's bill. *Fletcher, Eq. Pl. & Pr.*, 233. So a demurrer in equity in this state is founded exclusively upon the matter apparent upon the face of the bill, and admits the truth of the complainant's whole case, and denies that he is in equity entitled to relief, even supposing all the facts stated to be true. *Barroll, Md. Chan. Pr.*, 111. Matters of defense not affirmatively appearing on the face of a bill should be taken advantage of by answer, rather than by demurrer. *Riley v. Hodgkins*, 57 N. J. Eq. 278, 41 A. 1099; *Fenwick v. Sullivan*, 102 Vt. 28, 145 A. 258.

This court holds that the Fair Trade Act is valid, and that the bill of complaint in this case is sufficient. The court below was correct in overruling the demurrer.

*Order affirmed, with costs.*