# DUNDALK LIQUOR COMPANY *v.* TAWES, COMPTROLLER ET AL.

[No. 32, October Term, 1952.]

*Decided November 14, 1952.*

*Motion for rehearing, filed December 13, 1952, denied January 13, 1953.*

The cause was argued before MARKELL, C. J., and DELAPLAINE, COLLINS and HENDERSON, JJ.

*Abram C. Joseph,* with whom was *Daniel C. Joseph* on the brief, for the appellant.

*Robert M. Thomas, Assistant Attorney General,* with whom was *Hall Hammond, Attorney General,* on the brief, for J. Millard Tawes and Roger V. Laynor.

Submitted on brief by *George H. P. Eierman* for the intervenors.

MARKELL, C. J., delivered the opinion of the Court.

This is an appeal from a decree dismissing on demurrer a bill praying that Chapter 711 of the Acts of

1951 "be vacated and set aside, and declared unreasonable and void" and that the Comptroller and the Chief of the Alcoholic Beverages Division be prevented by injunction from enforcing the act and the Comptroller's regulations under it. Chapter 711 is an act authorizing and directing the Comptroller (1) to fix maximum discounts (or prohibit discounts) to be allowed by manufacturers or wholesalers of wines and liquors in the sale or distribution thereof and (2) to require the filing of schedules of prices and proposed price changes at which wines and liquors are sold by such manufacturers or wholesalers and by non-resident dealers. The act followed promptly our decision on March 16, 1951 in *Dundalk Liquor Co. v. Tawes,* 197 Md. 446, 79 A. 2d 525. In that case we held that a regulation of the Comptroller requiring the filing of schedules of prices and proposed price changes was not authorized by then existing law. The effect of the act of 1951 (if valid) is to "authorize and direct" the Comptroller to make and enforce just such regulations as we held unauthorized before the passage of the act.

In the bill plaintiff alleges, "4. That said enactment, while on its face declared to be intended to eliminate price wars, which, it is claimed, unduly stimulate the sale and consumption of wines and liquors, is in reality a price-fixing Bill, and attempts to grant vague, indefinite and arbitrary power to control the prices at which merchandise may be sold, to thwart and impede the regular course of business, and to stifle free competition, none of the said powers thus sought to be granted having any real relationship to the expressed purpose or to the public weal." In argument plaintiff bitterly assails the motives of the proponents of the bill, the Comptroller as chief among them, and asserts that the real but "camouflaged" purpose and effect of the act (if valid) is to enable "a pressure group" within the liquor industry to "evade the vigilance of the courts in the application of constitutional safeguards designed to preserve individual initiative." Paragraph (a) of the act declares, "It is the declared policy of this State

that it is necessary to regulate and control the sale and distribution within the State of wines and liquors, for the purpose of fostering and promoting temperance in their consumption and respect for and obedience to the law. In order to eliminate price wars, which unduly stimulate the sale and consumption of wines and liquors and disrupt the orderly sale and distribution thereof, it is hereby declared as the policy of this State that the sale of wines and liquors should be subjected to the following restrictions, prohibitions and regulations. The necessity for the enactment of the provisions of this section is therefore, declared as a matter of legislative determination." An invalid act cannot be made valid by a "preface of generalities" in the form of a legislative declaration of purpose. *Schechter v. United States,* 295 U. S. 495, 537, 55 S. Ct. 837, 79 L. Ed. 1570. But if a legislative declaration is not demonstrably untrue or meaningless, and if true, would support the validity of the act, the courts must accept the judgment of the legislature and cannot substitute a contrary judgment of their own. In sustaining the constitutionality of the Illinois Fair Trade Act the Supreme Court said, "There is a great body of fact and opinion tending to show that price cutting by retail dealers is not only injurious to the good will and business of the producer and distributor of identified goods, but injurious to the general public as well. The evidence to that effect is voluminous; but it would serve no useful purpose to review the evidence or to enlarge further upon the subject. True, there is evidence, opinion and argument to the contrary; but it does not concern us to determine where the weight lies. We need say no more than that the question may be regarded as fairly open to differences of opinion. The legislation here in question proceeds upon the former and not the latter view; and the legislative determination in that respect, in the circumstances here disclosed, is conclusive so far as this court is concerned. Where the question of what the facts establish is a fairly-debatable one, we accept and carry into effect the opinion of the legislature." *Old Dearborn Distribu-*

*ting Co. v. Seagram-Distillers Corp.*, 299 U. S. 183, 195-196, 57 S. Ct. 139, 145, 81 L. Ed. 109.

This has long been and must now be the attitude of this court toward facts underlying so-called economic legislation. We neither approve nor disapprove this act. We cannot speculate as to the motives of the legislature, the Comptroller or other proponents of the act. All economic legislation, from the protective tariff down to the recent supplement to the Miller-Tydings Act, 15 U. S. C. A. sec. 1, has been bitterly assailed and defended by opposing classes, usually activated by self-interest. Opposing strains of policy are sometimes found in the same or closely related legislation. The Sherman Act, 15 U. S. C. A. secs. 1-7, before the Miller-Tydings Act, forbade restraints on competition, including all resale price maintenance. The Miller-Tydings Act, as recently supplemented (act of July 14, 1952, c. 745, 15 U. S. C. A. sec. 45(a)), carves an exception out of the Sherman Act and, within limits, permits the States to compel price maintenance. In *Goldsmith v. Mead, Johnson & Co.*, 176 Md. 682, 7 A. 2d 176, 125 A. L. R. 1339, this court sustained the constitutionality of the Maryland Fair Trade Act. In several cases we have enforced that act against non-signers before the Supreme Court held such acts invalid as against non-signers. *Donner v. Calvert Distillers Corp.*, 196 Md. 475, 77 A. 2d 305; *Schwegmann Brothers v. Calvert Distillers Corp.*, 341 U. S. 384, 71 S. Ct. 745, 95 L. Ed. 1035. In *Daniel Loughran Co. v. Lord Baltimore Candy & Tobacco Co.*, 178 Md. 38, 43, 12 A. 2d 201, the first Unfair Sales Act was held unconstitutional because of uncertainty and potential inequities. In *Blum v. Engelman*, 190 Md. 109, 57 A. 2d 421, we sustained the constitutionality of the Unfair Sales Act of 1941. In *Cohen v. Frey*, 197 Md. 586, 80 A. 2d 267, we held that act unconstitutional as applied, with unjustly discriminatory effect, to a cash-and-carry grocer. We have ruled upon the validity of these various statutes with varying results according to the facts of each case and the provisions of each statute, but never by overruling the

legislative judgment on so debatable a question as the relative economic and political merits and demerits of unrestricted competition, when the subject matter has been within legislative power.

In *Dundalk Liquor Co. v. Tawes, supra,* we held that the Comptroller's regulations were not authorized by section 104 of Article 2B of the Code of 1951 for the reason, *inter alia,* that they tended to permit horizontal price fixing, which section 104 does not authorize. Notwithstanding our conclusion as to the effect of the Comptroller's regulations in this respect, the legislature by the act of 1951 expressly authorized such regulations. If the act of 1951 is valid, the Comptroller's regulations will be valid, because the legislature has said so in section 105, not because of what was argued or decided as to section 104 in the prior case.

In the bill plaintiff alleges, "5. That said legislation is upon its face unconstitutional and void, and would, if enforced, deprive the Complainant of rights guaranteed to it under the Constitution of the United States of America and the several Amendments thereto, as well as of rights guaranteed to it under the Bill of Rights and Constitution of the State of Maryland, and the same is arbitrary, unreasonable, and void.

"6. That the Complainant has a large investment in its business, has on hand substantial quantities of merchandise, and has opportunities and offers to purchase additional merchandise which it could market at a profit, provided it could do so without the threat of the interference with its business posed by the legislation mentioned.

"7. That the Complainant believes, and therefore alleges, that the Respondents purpose to act under the authority alleged by them to have been granted as aforesaid, unless restrained by Order of this Honorable Court, whereby said Complainant would be deprived of its freedom of contract, its right to engage in free, open and lawful competition, and caused to suffer great and irreparable loss and damage."

The short answer to most of these allegations and those previously quoted (*supra*)—and to most of plaintiff's argument—is that in Maryland no one has a constitutional right to engage in the liquor business—or for that matter to engage in "free and open competition" except as regulated and restricted by law. The Sherman Act, on which plaintiff largely relies, has no local counterpart in Maryland, and is not embodied in the constitution of the United States. It could be repealed *in toto*, as it has been repealed *pro tanto* by the Miller-Tydings Act and by the act of July 14, 1952, c. 745.

"In the field of regulatory law, more attention has perhaps been given by legislatures to the control and management of the liquor business than of any other traffic, because of the ease with which the privilege of engaging in it may be abused, and the social evils ordinarily incident to such abuse. The privilege of engaging in the traffic is not a right, but merely a franchise which the state may grant or withhold at will. As a corollary of that power, the State, if it elects to permit and license the traffic, may annex to its consent such conditions as are deemed necessary to prevent an abuse of the privilege, and, in so far as they affect the licensee, they are universally upheld. *Woolen & Thornton on Intoxicating Liquors*, sec. 88." *Miller v. State*, 174 Md. 362, 371, 198 A. 710, 715. Article 2B, sec. 69 of the Code of 1951 provides, "(License not Property.) Licenses issued under provisions of this Article shall not be regarded as property or as conferring any property rights. All such licenses shall be subject to suspension, restriction or revocation, and to all rules and regulations that may be adopted as herein provided." "Freedom of contract" with respect to intoxicating liquors, as a constitutional right, is and long has been substantially nil. "* * * since the adoption of the Twenty-first Amendment, the equal protection clause is not applicable to imported intoxicating liquor. * * * The fact that Joseph Triner Corporation had, when the statute was passed, a valid license and a stock of liquors in Minnesota imported under it, is immaterial. Independently of the

Twenty-first Amendment, the State had power to terminate the license. *Mugler v. [State of] Kansas,* 123 U. S. 623; *Premier-Pabst Sales Co. v. Grosscup,* 298 U. S. 226, 228." *Mahoney v. Triner Corp.,* 304 U. S. 401, 403, 404, 58 S. Ct. 952, 953, 82 L. Ed. 1424.

Plenary state control over intoxicating liquor, unrestricted by the Commerce Clause, is based on two grounds, (1) the Twenty-first Amendment, and (2) recent Supreme Court decisions which have expanded the scope, both in liquor cases and in other cases, of the old rule that the Commerce Clause, when Congress has not acted, does not prohibit local regulations of interstate commerce which primarily protect local interests, *e.g.,* pilotage laws, and only incidentally affect interstate commerce. With respect to intoxicating liquors the court has sometimes divided as to which of these two grounds is applicable, but the result is always the same. *State of California v. Thompson,* 313 U. S. 109, 61 S. Ct. 930, 85 L. Ed. 1219; *Duckworth v. Arkansas,* 314 U. S. 390, 62 S. Ct. 311, 86 L. Ed. 294; *Carter v. Commonwealth of Virginia,* 321 U. S. 131, 137, 64 S. Ct. 464, 88 L. Ed. 605. Before the Eighteenth Amendment this class of permitted local legislation was affirmatively enlarged by Congress by such permissive legislation as the Webb-Kenyon Act and its predecessors. *Clark Distilling Co. v. Western Maryland Railway Co.,* 242 U. S. 311, 37 S. Ct. 180, 61 L. Ed. 326. Both before the Eighteenth, and since the Twenty-first Amendment, these questions "must be judged in the light of our longstanding recognition of the exceptional problems involved in successfully regulating trade in intoxicating liquors." *Carter v. Commonwealth of Virginia, supra,* 321 U. S. 136-137, 64 S. Ct. 468. The Twenty-first Amendment provides, *inter alia,* "The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited." "The Amendment which 'prohibited' the 'transportation or importation' of intoxicating liquors into any state 'in violation of the laws thereof,' abrogated the right to

import free, so far as concerns intoxicating liquors. The words used are apt to confer upon the State the power to forbid all importations which do not comply with the conditions which it prescribes." *State Board of Equalization v. Young's Market Co.,* 299 U. S. 59, 61, 62, 57 S. Ct. 77, 78, 81 L. Ed. 38. The power to prohibit, under the Twenty-first Amendment, the interstate importation of liquor has been consistently held to include, in lieu of prohibition, conditions, *e. g.,* licenses or taxes, and "retaliatory" or "protective" legislation against liquor from specified other states, which formerly would have been clearly invalid under the commerce clause. *State Board of Equalization v. Young's Market Co., supra,* 299 U. S. 62, 57 S. Ct. 77; *Indianapolis Brewing Co. v. Liquor Control Commission,* 305 U. S. 391, 394, 59 S. Ct. 254, 83 L. Ed. 243; *Finch & Co. v. McKittrick,* 305 U. S. 395, 59 S. Ct. 256, 83 L. Ed. 246; *Ziffrin, Inc. v. Reeves,* 308 U. S. 132, 60 S. Ct. 163, 84 L. Ed. 128.

In *United States v. Frankfort Distilleries,* 324 U. S. 293, 300-301, 65 S. Ct. 661, 89 L. Ed. 951, a concurring opinion by Mr. Justice Frankfurter states the extent of state power under the Twenty-first Amendment and also the difference between state legislation treating intoxicating liquors like other articles and legislation as to intoxicating liquors as such, enacted in the exercise of power under the Twenty-first Amendment. "As a matter of constitutional law, the result of the Twenty-first Amendment is that a State may erect any barrier it pleases to the entry of intoxicating liquors. Its barrier may be low, high, or insurmountable. Of course, if a State chooses not to exercise the power given it by the Twenty-first Amendment and to continue to treat intoxicating liquors like other articles, the operation of the Commerce Clause continues. Since the Commerce Clause is subordinate to the exercise of state power under the Twenty-first Amendment, the Sherman Law, deriving its authority from the Commerce Clause, can have no greater potency than the Commerce Clause itself. It must equally yield to state power drawn from the

Twenty-first Amendment. And so, the validity of a charge under the Sherman Law relating to intoxicating liquors depends upon the utilization by a State of its constitutional power under the Twenty-first Amendment. If a State for its own sufficient reasons deems it a desirable policy to standardize the price of liquor within its borders either by a direct price-fixing statute or by permissive sanction of such price-fixing in order to discourage the temptations of cheap liquor due to cutthroat competition, the Twenty-first Amendment gives it that power and the Commerce Clause does not gainsay it. Such state policy can not offend the Sherman Law even though distillers or middlemen agree with local dealers to respect this policy. If an agreement among local dealers not to buy liquor through channels of interstate commerce does not offend the Sherman Law though a like agreement as to other commodities would, an agreement among liquor dealers to abide by state policy for a uniform price—which is far less restrictive of interstate commerce than a comprehensive boycott— can hardly be a violation of the Sherman Law." 324 U. S. 300-301, 65 S. Ct. 665.

In *Cohen v. Frey*, 197 Md. 586, 601, 603, 80 A. 2d 267, 275, we intimated that a state statute intended to provide a cover for violations of the Sherman Act would not be valid. That case did not involve intoxicating liquors and the statute in question did not deal with intoxicating liquors as such. The case does not support plaintiff's contention that the act of 1951 is invalid as permitting, and being designed to permit, violation of the Sherman Act. We assume, without deciding, that the requirements of schedules of price changes and notice to competitors tend to restrict competition and maintain prices and that such conduct by individuals, under no compulsion by law, would violate the Sherman Act. But the filing of price schedules and notice to competitors is not the act of individuals but is done under compulsion of state law with state officials. The fact that to the proponents of the law this may be pleasing compulsion does not change the nature of the

conduct. The Sherman Act does not "restrain state action or official action directed by a state." *Parker v. Brown*, 317 U. S. 341, 351, 63 S. Ct. 307, 313, 87 L. Ed. 315. If the act of 1951 did operate directly on dealers without the intervention of state agencies, it would still be within state power under the Twenty-first Amendment. *Schwegmann Brothers v. Calvert Distillers Corp., supra*, on which plaintiff strongly relies, only applies the axiom that resale price maintenance, unless permitted by the Miller-Tydings Act, is forbidden by the Sherman Act. The court holding that the Miller-Tydings Act did not permit enforcement of Fair Trade Acts against non-signers, it necessarily followed that such enforcement was forbidden by the Sherman Act.

In *Schwegmann Bros. v. Louisiana Board*, 216 La. 148, 43 So. 2d 248, 14 A. L. R. 2d 680, a statute which required all sales of liquor by wholesalers or by retailers (in packages) to be made at not less than cost plus specified mark-ups was held invalid under the due process clause. The court's conclusion was, "From all of which we conclude that the provisions * * * which relate to the mandatory minimum mark ups * * * do not tend, in a degree that is perceptible and clear, toward the accomplishment of the announced purpose of the statute, namely the regulation and control of the liquor traffic so that it 'may not cause injury to the economic, social and moral well-being of the people of the State.' They, in other words, are inappropriate for the achievement of the legitimate object described in the statute. Accordingly, we hold that such provisions are manifestly unreasonable within the contemplation of the state's police power, and, hence, are unconstitutional in that they violate the due process clauses of our state and federal constitutions." 216 La. 182, 43 So. 2d 259. In reaching this conclusion it was said (quoting *American Jurisprudence*), *"In every case it must appear that the means adopted are reasonably necessary and appropriate for the accomplishment of a legitimate object within the domain of the police power.* A statute to be within this power must also be reasonable in its opera-

tion upon the persons whom it affects, must not be for the annoyance of a particular class, and must not be unduly oppressive." 216 La. 170, 43 So. 2d 255 (italics the court's). On the subject of cut-throat competition and price wars, it was said, "As to whether the mark ups are reasonably needed to prevent cut throat competition and price wars (as appellants contend they are), there is no recitation in the statute revealing a legislative finding that such a condition in the liquor traffic existed in Louisiana at the time of or within a few years prior to the enactment of the legislation. Neither does the evidence adduced on the trial of this case conclusively disclose the existence thereof; at the most it shows that several isolated price cutting incidents between certain individuals occurred many years before the adoption of the statute." 216 La. 177-178, 43 So. 2d 258. Apparently the reason for these conclusions was that no similar provisions were applicable to manufacturers or to sales "over the bar". Two out of seven judges dissented, one on the ground of the extraordinary power of the state over intoxicating liquors.

Plaintiff relies strongly on this Louisiana case as supporting its contention that the act of 1951 is invalid under the due process clause and "is not reasonably adapted to secure its stated objective, but is patently calculated to avoid it." In support of these contentions plaintiff asserts that in order to prevent "undue stimulation of the sale and consumption of liquors", the proper remedy is not price maintenance but prohibition or restriction of liquor advertisements. If it were clear that in fact the act could not serve its avowed purposes, but could only cover ulterior objects of its proponents, it might be held arbitrary and invalid. But we should be rash indeed if we should not only hold the act arbitrary and invalid, but should undertake to tell the legislature how better to accomplish the seemingly impossible task of satisfactorily regulating the liquor traffic. The Louisiana *Schwegmann* case, if we should follow it, would measurably support plaintiff's conten-

tions. But under the decisions of this court we are unable to follow the Louisiana case in the reasoning (*supra*) by which it reached its conclusions. We cannot recognize that the state has the burden of proof to show "conclusively" (or preponderantly) that the means adopted are reasonably necessary and appropriate for the accomplishment of the avowed legitimate object.

Plaintiff assails as arbitrary the power conferred upon the Comptroller to prescribe maximum discounts or prohibit discounts. In *Cohen v. Frey*, 197 Md. 586, 80 A. 2d 267, we held invalid, as against a cash-and-carry grocer, the Unfair Sales Act for the reason, *inter alia*, that the statute included, in the grocer's "costs", a fictitious item of such discounts not actually paid but saved by paying cash. For several reasons, that case is not in point in the instant case. We are not satisfied that one has a constitutional right to conduct a cash-and-carry liquor business as he may conduct a grocery business. In the Louisiana *Schwegmann* case the statute involved contained a provision (not involved in the case) requiring substantially cash payments for liquor, *i.e.*, within thirty days after the fifteenth day after delivery. Aside from constitutional questions, the bill does not allege what (if any) maximum discounts the Comptroller has prescribed or what plaintiff has asked him to prescribe. For aught that appears, the Comptroller may prescribe different maxima for cash discounts and trade discounts. The question of construction of the act in this respect has not been raised. The Comptroller's authority over discounts is not price-fixing power, but essentially only power to prevent evasion under the guise of discounts.

In *Levine v. O'Connell*, 275 App. Div. 217, 88 N. Y. S. 2d 672, affirmed without opinion, 300 N. Y. 658, 91 N. E. 2d 322, it was held that an act authorizing an administrative board to require all liquor prices to be fixed by "fair trade" contracts, was an invalid attempt to delegate legislative power. The court assumed, without deciding, that direct legislation making such a re-

quirement would be valid. By the Laws of 1950, c. 689, § 101-c was added to the Alcoholic Beverage Control Law, imposing such a legislative requirement. Apparently the validity of this statute has not been questioned. This case has no bearing on the instant case. By paragraph (c) the Comptroller is not only "authorized" but "directed" to prescribe regulations requiring schedules of price changes and notice to competitors. As under paragraph (b) with respect to discounts, the authority delegated to the Comptroller is only power to prescribe modal details such as time and the like.

Plaintiff also assails as arbitrary the provisions of paragraph (c) authorizing the Comptroller to require the filing of information specified and other data in connection with wines and liquors "as the Comptroller may reasonably determine." Plaintiff cites no authority holding requirements of information arbitrary and invalid because they could conceivably be exercised arbitrarily, but only cases holding that such provisions must be exercised reasonably. *Federal Trade Commission v. American Tobacco Co.*, 264 U. S. 298, 306-307, 44 S. Ct. 336, 68 L. Ed. 696. In the instant case the statute itself is limited to such data "as the Comptroller may reasonably require." It is not alleged in the bill that the Comptroller has made or proposes to make any unreasonable requirement of information.

Article 2B, sec. 179, of the Code of 1951, provides, "(Inspections.) The Comptroller, his duly authorized deputies, inspectors and clerks, the Board of License Commissioners of the County or the City in which the place of business is located, its duly authorized agents and employees, and any peace officer of such county or city, or any of them, shall be fully authorized to inspect and search, without warrant, at all hours, any building, vehicle and premises in which any alcoholic beverages are authorized to be kept, transported, manufactured or sold under a license or permit issued under the provisions of this Article, and any evidence discovered during any such inspections shall be admissible in any

prosecution for the violation of the provisions of this or any other Article, or upon any hearing for revocation, suspension or restriction of the license or permit. * * *" Section 53 (17) requires a statement by the owner of the premises consenting to such search. If any remnant of privacy in the conduct of business has survived the inquisitorial provisions of tax legislation, it is not to be found in a liquor business subject to the provisions of Article 2B, sec. 179.

*Decree Affirmed, with costs.*