## HOME UTILITIES COMPANY, INC. *v.* REVERE COPPER AND BRASS, INC. ET AL.

[No. 147, October Term, 1955.]

*Decided April 11, 1956.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Paul F. Due,* with whom were *Harry Silbert* and *Melvin J. Sykes* on the brief, for the appellant.

*William L. Marbury,* with whom were *John W. Avirett, 2nd,* and *Piper & Marbury* on the brief, for the appellees.

HENDERSON, J., delivered the opinion of the Court.

By bill for declaratory judgment, the appellant launched another attack upon the "Fair Trade" Act, Code (1951), Art. 83, secs. 102-110, and particularly upon the so-called "non-signer" provisions. The undisputed facts show that the appellant wilfully and knowingly advertised and offered for sale appellee's trade-marked products at less than the price stipulated in contracts entered into by the appellee with others. Sec. 107 of the Article provides that under such circumstances the person so advertising, offering for sale or selling, whether or not a party to such a contract, is guilty of unfair competition and is subject to an action at the suit of any person damaged thereby. After a hearing at which the facts were stipulated, the Chancellor dismissed the bill and granted the appellee's counterclaim for an injunction. It seems unnecessary to state the facts in detail. It is sufficient to note that the complainant sells merchandise, including "Revere Ware", both within and without the State, does not engage in sales below cost, but attempts to produce a gross profit of twenty per cent on all items sold. Although the complainant has not signed any Fair Trade contract in regard to "Revere Ware", it has purchased it from distributors with knowledge of such agreements, and has sold these trade-marked products at prices below those specified in the agreements, and has continued to do so after notice to desist.

The appellant contends that the non-signer provision is invalid as applied to its business under present market conditions, on three grounds: (1) that it deprives the appellant of its property contrary to the law of the land in violation of Article 23 of the Maryland Declaration of Rights, (2) that it constitutes an unlawful delegation to private individuals, without adequate standards, of the legislative power to fix prices, and (3) that it violates the supremacy clause of the Maryland Constitution, Article 2, Declaration of Rights.

The appellant does not contend that the provision violates due process under the Fourteenth Amendment to

the United States Constitution, or the commerce clause. The due process question appears to have been definitely settled by the Supreme Court. See *Old Dearborn Co. v. Seagram Corp.,* 299 U. S. 183; *Schwegmann Bros. Giant Super Mkts. v. Eli Lilly & Co.,* 205 F. 2d 788 (CCA, 5th), *certiorari* denied, 346 U. S. 856, 905; *Lionel Corp. v. S. Klein,* 120 N. E. 2d 802 (N. Y.), dismissed for want of a substantial Federal question, 348 U. S. 860; *Lionel Corp. v. Grayson-Robinson Stores,* 104 A. 2d 304 (N. J.), dismissed for want of a substantial Federal question, 348 U. S. 859; *General Electric Co. v. Masters, Inc.,* 120 N. E. 2d 802 (N. Y.), dismissed for want of a substantial Federal question, 348 U. S. 892. These cases also dispose of any contention based on a claim of violation of the Federal Constitution by interference with the power of Congress to legislate in matters of interstate commerce.

The first consideration of the Maryland Fair Trade Act by this Court was in *Goldsmith v. Mead Johnson & Co.,* 176 Md. 682, 686. It was there noted that "In construing this article [23] of the Declaration of Rights, the decisions of the Supreme Court on the Fourteenth Amendment are 'practically direct authorities'." It was held that the Act did not violate due process or the law of the land. The decision was followed in *Schill v. Remington Putnam Co.,* 179 Md. 83. As noted in the *Goldsmith* case, the Maryland statute is substantially identical with the statutes enacted in forty-four other states. Prior to 1951, the validity of these statutes had been upheld by courts of last resort in sixteen states. The only dissenting voice was raised in *Liquor Store v. Continental Distilling Corp.,* 40 So. 2d 371 (Fla.). Encouraged by certain language in the majority opinion in *Schwegmann Bros. v. Calvert Corp.,* 341 U. S. 384, which did not deal with a Constitutional question, but held that the Sherman Act was not modified by the Miller-Tydings Act so far as non-signers are concerned, attempts were made to induce courts to re-examine their prior decisions upholding the validity of the non-signer provisions of the Fair Trade laws. In no case have these efforts been successful. See

*Scoville Mfg. Co. v. Skaggs Pay Less Drug Stores,* 291 P. 2d 936 (Cal.) ; *General Electric Co. v. Klein,* 106 A. 2d 206 (Del.) ; *Lionel Corp. v. Grayson-Robinson Stores, supra; General Electric Co. v. Masters, Inc., supra; Burche Co. v. General Electric Company,* 115 A. 2d 361 (Pa.) ; *Seagram Distillers Company v. Corenswet,* 281 S. W. 2d 657 (Tenn.) ; *Bulova Watch Co. v. Anderson,* 70 N. W. 2d 243 (Wis.). See also *Schwegmann Bros. Giant Super Mkts. v. Eli Lilly & Co., supra.*

The appellant contends that our holding in the *Goldsmith* case is not controlling because conditions in the market are different today, and because the application of the statute to a method of doing business shown in detail in the stipulation of facts was not before this Court in the *Goldsmith* case. The argument is that although the necessity for resale price maintenance to protect manufacturer good will may have been fairly debatable at the time of the *Old Dearborn* decision, and hence within the police power of the state, experience has demonstrated that the statutes are now accomplishing a result at variance with their original purpose. It is said that the provision tends to establish uniform prices for all types of outlets, regardless of costs, efficiency and service, impedes innovation, forces a merchandising stress upon service, preserves high costs of distribution, and removes incentives to efficiency produced by competition in the retail market—all at a time when loss leader problems are relatively insubstantial and can be met by the less generalized legislation against sales below cost. It is argued that the fair trade legislation gives the brand owner protection that he does not need, at the expense of the consumer and the general public. "In short, while the good will of a manufacturer is entitled to reasonable protection, the legislature cannot protect the manufacturer's prices from legitimate price competition."

We find no merit in the contention. If we were disposed to re-examine the decision in the *Goldsmith* case, we think it is clear that the arguments advanced by the appellant go primarily to the wisdom of the statute. In

*General Electric Co. v. Klein, supra* (p. 210), the court said: "* * * these objections must depend for their validity upon the tacit assumption that resale price maintenance is so clearly unsound economically that a court can say without hesitation that the legislative findings to the contrary have no reasonable basis to support them. * * * The economic soundness of retail price maintenance is not an open-and-shut question. It has been a subject of keen controversy for many years, and there are two schools of thought upon the matter. Before the passage of the McGuire Act—to go back no further than 1951— the House Committee on Interstate and Foreign Commerce held extensive hearings upon the subject. A sharp cleavage of views developed. For example, the Federal Trade Commission opposed resale price maintenance; the Department of Commerce favored it, concluding that 'the case against fair trade is more theoretical than real'. Again, the various aspects of the subject are reviewed in the majority and minority reports of the House Committee on the Judiciary on a bill to amend the Sherman Act, in which the divergent views of the two schools of thought are set forth. One insists that resale price maintenance is bad for all—manufacturer, retailer and consumer; the other asserts that it is good for all.

"It would serve no purpose to marshal the arguments pro and con. That is not our function. In these circumstances the duty of the Court is plain. The question before us is not the wisdom of this legislation; it is whether the situation presents a reasonable necessity for the protection of the public welfare, and whether the means bear a reasonable relation to the end sought. * * * And if these questions are fairly debatable, the legislative judgment must control.

"Not only are these questions 'fairly debatable'; they have been warmly debated for years, and the debate, we gather, is still going on. The legislative judgment must therefore prevail."

The case of *Cohen v. Frey & Son, Inc.*, 197 Md. 586, is clearly distinguishable. That case dealt with the Unfair

Sales Act of 1941 (Code (1951), Art. 83, secs. 111-115). Cf. *Blum v. Engelman,* 190 Md. 109. In *Dundalk Liquor Co. v. Tawes,* 201 Md. 58, 63, Judge Markell for the Court pointed out that "We have ruled upon the validity of these various statutes with varying results according to the facts of each case and the provisions of each statute, but never by overruling the legislative judgment on so debatable a question as the relative economic and political merits and demerits of unrestricted competition, when the subject matter has been within legislative power." The courts of last resort that have rejected fair trade acts on Constitutional grounds seem to have usually done so because of an unwillingness to accept the legislative judgment as to the economic facts. *Miles Laboratories v. Eckerd,* 73 So. 2d 680 (Fla.) ; *Shakespeare Co. v. Lippman's Tool Shop Sporting G. Co.,* 54 N. W. 2d 268 (Mich.) ; *Cox v. General Electric Company,* 85 S. E. 2d 514 (Ga.) ; *Union Carbide & Carbon Corp. v. White River Distrib.,* 275 S. W. 2d 455 (Ark.)`. We think the legislative findings are at least fairly debatable.

The contention as to improper delegation of power is likewise without merit. This argument was answered in the *Goldsmith* case. It has been repeatedly answered in the cases heretofore cited from other states. In *Eli Lilly & Co. v. Saunders,* 4 S. E. 2d 528, 537 (N. C.), it was said: " 'The statute is not a delegation of power to private persons to control the disposition of the property of others, because the restrictions already imposed with the knowledge of the prospective reseller runs with the acquisition of the purchased property and conditions it'."

The third contention of the appellant requires a somewhat fuller discussion. The non-signer provision of the Maryland Act was first enacted in 1935, and repealed and re-enacted by ch. 239, Acts of 1937. The Miller-Tydings Act, 15 U. S. C. A. sec. 1, was passed four months later. At the time of the last enactment of the Maryland statute it was in conflict with the Sherman Act as construed in *Dr. Miles Medical Co. v. Park & Sons Co.,* 220 U. S. 373, and the Federal Trade Commission Act as construed in

*Federal Trade Comm. v. Beech-Nut Co.*, 257 U. S. 441. Even after the enactment of the Miller-Tydings Act, the decision in *Schwegmann Bros. v. Calvert Corp.*, 341 U. S. 384, took the view that while the Miller-Tydings Act legalized a resale price maintenance agreement, it was still a violation of the anti-trust laws to attempt enforcement against a non-signer. Only since the McGuire Act in 1952, 15 U. S. C. A. 45, has Congress provided that the anti-trust laws do not reach the enforcement of resale price maintenance agreements against non-signers. There has been no re-enactment of the Maryland statute since that time.

It is contended that the Maryland statute, in violation of the Sherman Act when passed, was not validated by the subsequent modifications of the Sherman Act, but was void *ab initio* under the supremacy clause of the Maryland Constitution. To have any effect whatever, it is argued, it would have to be re-enacted by the State legislature. Article 2 of the Declaration of Rights provides that "The Constitution of the United States and the Laws made or which shall be made in pursuance thereof * * * are and shall be the Supreme Law of the State; and the Judges of this State, and all the People of this State, are, and shall be bound thereby, anything in the Constitution or Law of this State to the contrary notwithstanding." It is argued that the phrase "all the People of this State" necessarily includes the Legislature in the enactment of legislation. Nor could validating legislation by Congress have any effect, for the question here raised is exclusively one of state law.

This view was adopted by the Georgia court in *Grayson-Robinson Stores v. Oneida Limited*, 75 S. E. 2d 161 (Ga.). It has been rejected by the highest courts in New Jersey, New York and Pennsylvania and by the U. S. Court of Appeals for the 5th circuit. *General Electric Co. v. Packard Bamberger & Co.*, 102 A. 2d 18 (N. J.); *General Electric Co. v. Masters, Inc., supra; Burche Co. v. General Electric Company, supra; Schwegmann Bros. v Eli Lilly & Co., supra.* See also Note, 19 A. L. R. 2d

1139. The better view seems to be that where a state statute is invalid because in conflict with Federal legislation, the state statute is in effect merely unenforceable or suspended by the existence of the Federal legislation, and consequently the repeal of the Federal statute reinstates or revives the state law without an express reenactment by the state legislature. Cf. *Tua v. Carriere,* 117 U. S. 201; *In re Rahrer,* 140 U. S. 545; *Central Pacific Railroad v. Nevada,* 162 U. S. 512; 1 *Sutherland, Statutory Construction* (3d ed.), sec. 2027.

In *Schill v. Remington Putnam Co., supra,* we upheld the Maryland statute, although it had not been re-enacted subsequent to the passage of the Miller-Tydings Act. It was the Sherman Act alone which, according to the first *Schwegmann* decision, prevented the application of the Maryland Fair Trade Act to interstate transactions. The Miller-Tydings and McGuire Acts in effect repealed this provision of the Sherman Act and no further obstacle therefore remains to the fullest application of the Maryland statute. Cf. *Sunbeam Corp. v. MacMillan,* 110 F. Supp. 836 (D. C. Md.). We think the supremacy clause does not require re-enactment of the Maryland statute in order to make it applicable in the instant case.

*Decree affirmed, with costs.*