LUSKIN'S, INC. d/b/a Luskin's Super
Discount Stores *v.* U. S. PIONEER
ELECTRONICS CORPORATION

[No. 1023, September Term, 1974.]

*Decided June 6, 1975.*

The cause was argued before Orth, C. J., and Powers and
Moore, JJ.

*Charles Yumkas,* with whom were *Blum, Yumkas,
Mailman & Gutman* on the brief, for appellant.

*William A. Fenwick,* with whom were *William C. Stifler,
III* and *Donald A. Krach* and *Niles, Barton & Wilmer* and

*Davis, Stafford, Kellman & Fenwick* on the brief, for appellee.

ORTH, C. J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court for Baltimore County in Equity issued 27 November 1974 upon an action instituted by U. S. Pioneer Electronics Corporation permanently enjoining Luskin's, Inc., d/b/a "Luskin's Super Discount Stores", "from advertising, offering for sale or selling [Pioneer's] products at prices which are less than the resale prices now or hereafter stipulated therefor by [Pioneer], pursuant to the current Fair Trade Agreements in effect with retail dealers in the State of Maryland. . . ." It was further ordered that Luskin's pay "the costs of this action as reflected by the Clerk's bill." Luskin's appealed.

Code, Art. 83, § 107 of the Fair Trade Act provides:

> "Wilfully and knowingly advertising, offering for sale or selling any commodity at less than the price stipulated in any contract entered into pursuant to the provisions of §§ 102-110, whether the person so advertising, offering for sale or selling is or is not a party to such contract, is unfair competition and is actionable at the suit of any person damaged thereby."

The issue for decision is whether the non-signer provision of § 107 is unconstitutional under Article III of the Constitution of Maryland as an unlawful delegation of legislative power to private persons.

Luskin's frankly points out that "[i]t is clear that previous Maryland decisions have ruled in favor of the constitutionality of the non-signer provisions." It refers to *Goldsmith v. Mead Johnson & Co.* 176 Md. 682; *Schill v. Remington Putnam Book Co.,* 179 Md. 83; *Hutzler Bros. Co. v. Remington Putnam Book Co.,* 186 Md. 210; *Donner v. Calvert Distillers Corporation,* 196 Md. 475; *Home Utilities Company v. Revere Copper & Brass, Inc.,* 209 Md. 610; *Dart Drug Corporation of Maryland v. Eli Lilly & Company,* 216

Md. 20; *G.E.M., Inc. v. Plough, Inc.*, 228 Md. 484; *Salisbury Beauty Schools, et al. v. State Board of Cosmetologists*, 268 Md. 32. See *Parke, Davis & Company v. G.E.M., Inc.*, 201 F. Supp. 207 (D. Md. 1962); *Sony Corporation of America v. Best Products Co., Inc.*, 354 F. Supp. 561 (D. Md. 1972); *Parke Davis & Co. v. Health Cross Stores, Inc.*, 232 F. Supp. 310 (D. Md. 1964), *aff'd*, 364 F. 2d 214 (4th cir. 1966). In *Salisbury*, decided 7 February 1973, the Court of Appeals relied on its prior holdings in the fair trade area in support of its conclusion that a statute prohibiting beauty schools from collecting fees for services performed by students to members of the public was constitutional as a legitimate exercise of the police power. It said, 268 Md. at 58-59:

> "We have also upheld the constitutionality of the Maryland 'Fair Trade Act'."

It cited *Goldsmith, Schill,* and *Home Utilities Co.*

Although recognizing that the Court of Appeals' cases as decided are dispositive of the issue, Luskin's urges us to depart from them. It claims that the Court's conclusion in *Goldsmith* that the non-signer provision of the Act was constitutional, which it followed in the subsequent decisions, was on two bases: (1) the holding in *Old Dearborn Distributing Co. v. Seagram-Distillers Corp.*, 229 U. S. 183 (1936), and (2) the judicial acceptance and validation of similar laws in other jurisdictions. It suggests, as to the first basis, that reliance on *Old Dearborn* was misplaced, and, that the second basis has been severely eroded.

With respect to *Old Dearborn*, Luskin's quotes *Olin Mathieson Chemical Corp. v. White Cross Stores, Inc.*, 199 A. 2d 266 (Pa. 1964) at 267:

> "Old Dearborn, as a careful study will bear out, is not precedent for the proposition that the non-signer clause in a state price-fixing statute, delegating legislative power to private individuals, does not violate the state constitution."

*Corning Glass Works v. Ann & Hope, Inc. of Danvers*, 294 N.E.2d 354 (Mass. 1973) looks to Davis, *Administrative Law*

(1958 ed.) for an explanation why *Old Dearborn* is not precedent for the proposition. It quotes Davis at 361:

> " 'The entire opinion [of the Supreme Court in *Old Dearborn*] on the point consisted of little more than the announcement of the conclusion . . . . Cases holding [unconstitutional] delegations to private parties were distinguished on the ground that "Here, the restriction, already imposed with the knowledge of the appellants [retailers], ran with the acquisition and conditioned it." . . . The various opinions that deny that any delegation to private parties is involved in the non-signer provisions seem clearly unsound. The plain fact is that the statute confers upon the manufacturer (or other distributor), acting in combination with a single retailer, to fix the minimum price at which other retailers may sell. That is undeniably a delegation of power to private parties.' Davis, *Administrative Law*, (1958 ed.) § 2.14, pp. 145-147."

Luskin's gives other cases which it states have found that *Old Dearborn* does not support state constitutionality of non-signer provisions. *Bulova Watch Co., Inc. v. Brand Distributors of North Wilkesboro, Inc.*, 206 S.E.2d 141 (N.C. 1974); *Bulova Watch Co., Inc. v. Zale Jewelry Co. of Cheyenne*, 371 P. 2d 409 (Wyo. 1962); *House of Seagram, Inc. v. Assam Drug Co.*, 176 N.W.2d 491 (S.D. 1970).

With respect to the second basis, Luskin's asserts that after the opinion in *Home Utilities Company v. Revere Copper & Brass, Inc., supra,* in 1956 "the unmistakable trend of decisions in other jurisdictions has been to declare non-signer provisions unconstitutional." It observes that five states have reversed a prior holding of constitutionality. Washington in *Remington Arms Co., Inc. v. Skaggs*, 345 P. 2d 1085 (1959); Pennsylvania in *Olin Mathieson Chemical Corp. v. White Cross Stores, Inc., supra;* South Dakota in *House of Seagram, Inc. v. Assam Drug Co., supra;* Massachusetts in *Corning Glass Works v. Ann & Hope, Inc. of Danvers, supra;* North Carolina in *Bulova Watch Co., Inc.*

*v. Brand Distributors of North Wilkesboro, Inc., supra.* The last case specifically overruled *Eli Lilly & Co. v. Saunders,* 4 S.E.2d 528 (N.C. 1939) relied on by our Court of Appeals in *Home Utilities,* 209 Md. at 617. Luskin's quotes *Bulova Watch Co., Inc. v. Zale Jewelry Co. of Cheyenne, supra,* at 416:

> "In any event, the pendulum of state decision has now definitely swung from the constitutional to the unconstitutional side. This numerical majority is not in itself conclusive of the matter, but it does seem to portend a change in judicial thinking and is justified by better reasoning and logic."

Luskin's lists 28 states in which non-signer provisions of fair trade laws have been held to violate state constitutions by judicial decision [1], and 14 states, other than Maryland, in which such provisions have been upheld against constitutional attack.[2]

Prodding us to depart from the prior holding of our Court of Appeals, Luskin's quotes what was said in *White v. King,* 244 Md. 348, 354:

> "The doctrine of *stare decisis,* important as it is, is not to be construed as preventing us from changing a rule of law if we are convinced that the rule has become unsound in the circumstances of modern life."

---

1. Alabama, 1962; Arkansas, 1955; Colorado, 1956; Florida, 1949; Georgia, 1955; Idaho, 1963; Indiana, 1957; Iowa, 1961; Kansas, 1958; Kentucky, 1958; Louisiana, 1956; Massachusetts, 1973; Michigan, 1952; Minnesota, 1960; Montana, 1961; Nebraska, 1955; Nevada, 1964; New Mexico, 1957; North Carolina, 1974; Oklahoma, 1961; Oregon, 1956; Pennsylvania, 1964; South Carolina, 1957; South Dakota, 1970; Utah, 1956; Washington, 1960; West Virginia, 1958; Wyoming, 1962.

2. Arizona, 1967; California, 1955; Connecticut, 1962; Delaware, 1966; Hawaii, 1960; Illinois, 1958; Mississippi, 1964; New Hampshire, 1960; New Jersey, 1954; New York, 1954; Ohio, 1963; Rhode Island, 1964; Tennessee, 1963; Wisconsin, 1955.

For a discussion of the validity, as a matter of state constitutional law, of non-signer provisions in fair trade statutes see Annot., 60 A.L.R.2d 420 (1958) and later case service thereto 1967-1975.

The Court observed, note 1 at 354-355:

> "Lord Gardiner, Lord Chancellor of England, has recently announced that the decision of the House of Lords, in effect for more than sixty years, that it had no power to alter its own past decisions, has been changed. Lord Gardiner said that hereafter, the Law Lords will 'depart from a previous decision when it appears right to do so.' N. Y. Times, July 31, 1966, § E. p. 6."

Even if, in proper circumstances, we could deem a prior ruling of the Court of Appeals as not controlling, but see *Loyola Fed. S. & L. v. Trenchcraft*, 17 Md. App. 646, 659, and *Bagley v. Warden*, 1 Md. App. 154, 161, we are by no means persuaded that the rule here challenged has become unsound in the circumstances of modern life. The Court of Appeals met the point head on in *Home Utilities*. It was claimed that the holding in *Goldsmith* was not controlling because conditions in the market had changed, that fair trade legislation gives the brand owner protection, that he does not need, at the expense of the consumer and the general public, and that although the good will of a manufacturer is entitled to reasonable protection, the legislature cannot protect the manufacturer's prices from legitimate price competiton. The Court said, 209 Md. at 615:

> "We find no merit in the contention. If we were disposed to re-examine the decision in the *Goldsmith* case, we think it clear that the arguments advanced by the appellant go primarily to the wisdom of the statute."

It quoted, at 616, from *General Electric Co. v. Klein*, 106 A. 2d 206, 211 (Del. 1954):

> "It would serve no purpose to marshal the arguments pro and con. That is not our function. In these circumstances the duty of the Court is plain. The question before us is not the wisdom of this legislation; it is whether the situation presents a

reasonable necessity for the protection of the public welfare, and whether the means bear a reasonable relation to the end sought. * * * And if these questions are fairly debatable, the legislative judgment must control.

"Not only are these questions 'fairly debatable'; they have been warmly debated for years, and the debate, we gather, is still going on. The legislative judgment must therefore prevail."

It opined, at 617: "The courts of last resort that have rejected fair trade acts on Constitutional grounds seem to have usually done so because of an unwillingness to accept the legislative judgment as to the economic facts . . . . We think the legislative findings are at least fairly debatable." We are in complete accord with this view.

*Judgment affirmed; appellant to pay costs.*